VALLEY PLANTING COMPANY *v.* CURRIE.

Opinion delivered April 25, 1927.

1. ACCOUNT STATED—EFFECT OF SETTLEMENTS.—An action by the former manager of defendant corporation to recover one-third of an income tax refund, under a contract to pay him one-third of the net earnings for his services, was not barred by reason of annual settlements in which the income taxes were deducted from the gross earnings, nor by final settlement, since the taxes were paid under the erroneous belief that the amount was due, and hence they were not considered in such settlements.

2. LIMITATION OF ACTIONS—RECOVERY OF SHARE OF TAX REFUND.—The statutes of limitation did not run against a former manager's right of action for share of an income tax refund until such refund was made, so that an action brought within the statutory period, after demanding his share immediately on learning of refund, was not barred.

3. TRIAL—TRANSFER OF CAUSE.—Where a cross-complaint for review of long and complicated accounts running for many years, between defendant corporation and its former manager, suing for his share of an income tax refund, was not filed until over four years after his last connection with defendant, the court did not err in sustaining a demurrer thereto and refusing to transfer the case to equity, as the matters charged would have been barred by the statute, either on plea or demurrer in the court of equity.

4. ESTOPPEL—CONDUCT OF PLAINTIFF.—A corporation's former manager was not estopped to share in a refund of income taxes by a disclaimer of interest when the government made claim against the corporation for additional taxes, where the possibility of a refund was not considered by either party when his stock was sold, and the fact that a refund was made which resulted in additional assessment against him personally first brought the matter to his attention.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; affirmed.

*Williamson & Williamson,* for appellant.

*Coleman & Gantt,* for appellee.

McHANEY, J. Appellant, Valley Planting Company, is an Arkansas corporation, and, from the time of its organization to December 31, 1921, and for some time thereafter, it had only three stockholders. When originally organized the stockholders were J. M. Taylor, J.

G. Taylor and Andrew Nunn, each owning a one-third interest in the capital stock of $15,000. In 1904 J. M. Taylor died, and his stock passed to his daughter, Henrietta Taylor. On March 1, 1901, appellee, J. D. Currie, purchased the capital stock owned by Andrew Nunn, and from that time on to December 31, 1921, he continued to be the owner of a one-third interest therein, and was the general manager of the corporation. J. M. and J. G. Taylor, as well as other members of the Taylor family, owned valuable farming lands in Drew, Desha and Lincoln counties, and this corporation was organized for the purpose of operating these farms or plantations, doing a plantation supply business, operating gins and other business pertaining thereto. In 1909 the appellant and appellee entered into the following written contract:

"State of Arkansas, County of Jefferson.

"This contract between the Valley Planting Company, a corporation, John D. Currie, and J. M. and J. G. Taylor (a firm composed of J. G. Taylor and Henrietta Taylor) witnesseth:

"That said Valley Planting Company has employed said J. D. Currie to manage the business of the corporation, and has rented from said J. M. and J. G. Taylor their lands in Drew, Desha and Lincoln counties. Said corporation is to pay out of its gross earnings the current expenses (other than the salary of the said Currie and the rent of said lands) and is to reserve four thousand five hundred dollars of its net earnings to pay annual dividends. The said Currie is to have for his services as manager one-third of the remaining net earnings, and said J. M. and J. G. Taylor is to have the other two-thirds of the net earnings for the rent of their lands. This contract is for the year 1909 and from year to year thereafter, subject to be terminated at the end of any year by notice from either party.

"This the 28th day of June, 1909."

The parties continued to operate under this contract from that time until the appellee sold his stock, December

31, 1921, to Mr. Dillard Saunders, who thereafter succeeded to the management of the corporation in the place of the appellee. The business of the corporation was conducted apparently without consultation with Miss Henrietta Taylor, Mr. J. G. Taylor and appellee consulting together regarding the company's operations when they deemed it proper to do so, J. G. Taylor being president, Miss Henrietta Taylor vice president, and the appellee general manager. No stockholders' or directors' meetings were held, and the business of the company was conducted more as a partnership than that of a corporation. At the end of each year the business done for that year was audited, the books closed, and each of the stockholders credited with one-third of the profits, after deducting all expenses, including income and excess profits taxes. The record shows the company was very successful, especially for the years 1917, 1918 and 1919, when it paid for each of those years a large amount of income and excess profits taxes to the Government. In September, 1921, appellee wrote Mr. J. G. Taylor, and, among other things, mentioned in the letter was that he had heard that two revenue men were after Pickens for $60,000 on 1917, 1918 and 1919, and said: "We have had two communications from the revenue men for 1918 and 1919, that are holding for you; hope you will not have to give up anything now." He further expressed the hope, in this letter, that Mr. Taylor would be able to buy all his interest in the Valley Planting Company. In the sale of his stock to Saunders, appellee said nothing about the probability of the Government demanding any additional tax of the corporation. In December, 1922, or in January, 1923, Mr. David A. Gates was employed by the Valley Planting Company in the matter of the adjustment of the income and profit taxes between it and the Government for the years 1917, 1918 and 1919, and, as a result of his employment, he secured from the Government for those years a total refund of $13,374.33, for which he charged a fee of $2,500, leaving a net amount of refund in the sum of $10,874.33. This

readjustment was made by the Government in the fall of 1923, but, because of error in the issuing of the first checks, final vouchers were not delivered until in the spring of 1924. At the time of his employment, the Government was asserting a claim for an additional income tax against the corporation for those years, amounting to between $20,000 and $30,000, but; as above stated, the Government not only abandoned its claim against the corporation, but made a refund to it in the sum stated. But the obtaining of the refund for the Valley Planting Company resulted in a large increase of the personal tax against the appellee and the Taylors, as individuals. When Mr. Currie was notified of the increase of his personal tax, and that the corporation had been given a refund, he immediately demanded of Mr. Taylor that his additional tax be paid out of this money, or that the corporation pay it. Mr. Taylor declined to do this, and he thereafter, on February 7, 1925, instituted this action against the Valley Planting Company to recover one-third of the total amount of refund. Appellant demurred to the complaint, which was overruled, and it filed an answer and cross-complaint, the answer denying material allegations of the complaint, and the cross-complaint charging certain irregularities on the part of appellee and his son, who was the bookkeeper, in the keeping of the accounts, and that a restatement of the account would result in the indebtedness of appellee to the Planting Company, and praying that the cause be transferred to equity. Demurrer was sustained to the cross-complaint, and, at the conclusion of the testimony, the substance of which has been heretofore stated, the court instructed the jury to return a verdict for the appellee in the sum of $3,624.74, with interest at six per cent. per annum from May 1, 1924. The jury returned a verdict for $3,991.45, which included the interest on the amount given the jury by the court, and on which judgment was entered, from which comes this appeal.

Appellant first insists that the action of appellee was barred because of the annual settlements made at the end

of each year of the years involved, when the net profits of the corporation were ascertained and distributed, and also when the final settlement between them was made at the time he sold his stock and severed his connection with the company, which, as appellant contends, resulted in an account stated. We do not agree with this contention. It is undisputed that the amount of income and excess profits taxes was deducted from the gross earnings for the years involved, and, but for the payment of these taxes, appellee would have received his one-third thereof under his contract with the company. It was necessarily a part of his compensation under his contract, under the system the parties had adopted of handling the company's business, and paying the appellee for his splendid management of the company's affairs. It is furthermore undisputed that this money was paid out by the company erroneously under the belief that this amount was due the Government, and it was not therefore taken into consideration in the annual settlements, or in the final settlement when he sold his stock.

Appellant's next contention is that the action is barred by the statute of limitations, but we do not agree with this contention. The refund was made by the Government in May of 1924, and the statute did not begin to run until that time. The cases cited by appellant, to the effect that mere ignorance of the existence of a cause of action does not prevent the running of the statute of limitations, are correct declarations of law, but this is not a case of that kind. In the very nature of things appellee could not have maintained an action against appellant for the recovery of his interest in this refund until the refund had been made by the Government. He therefore had no cause of action until this sum of money, which had been erroneously paid to the Government, was allowed and paid back to the corporation by the Government. He very shortly thereafter learned of this fact, because he received a notice of an increase of his personal taxes, and advising him of the readjustment of

the corporation's taxes, resulting in the assessment of an additional tax against him. He immediately demanded his share of this refund, and thereafter, within the period of the statute, brought this action to recover same. We therefore hold that the statute began to run against his right of action from the date of the payment of the refund to it by the Government.

It is next suggested that the court erred in refusing to transfer the case to equity. There was no error in the court's action in this regard, as, even though the case had been transferred to equity, the matters set up and charged in the cross-complaint would have been barred by the statute of limitations, either on a plea thereto or by way of demurrer. *Cunningham* v. *Dellmon,* 151 Ark. 409, 237 S. W. 450. The cross-complaint of appellant is lengthy, and was largely based on long and complicated accounts between it and appellee, running for many years, and it contained the allegation that "the Valley Planting Company did not undertake to recheck the accounts of the said J. D. Currie until the filing of the present suit," and "it now develops, on an examination of the books, as kept under the supervision and direction of the said J. D. Currie," that he allowed certain irregularities to exist. The cross-complaint was filed April 3, 1925, and the last connection appellee had with the company, as manager and in charge of the accounts, was December 31, 1921. It will therefore be seen that appellant waited too long to have the accounts reviewed, either in a court of law or equity. There was therefore no error either in sustaining the demurrer to the cross-complaint or in the refusal of the court to transfer to equity.

The final contention of appellant is that appellee is estopped on the ground set out in his requested instruction number 7, to the effect that, if the jury should find that the Government made a claim against appellant for additional taxes for the years mentioned, and that appellee "assumed by his conduct that he had no interest in this trouble of the Valley Planting Company, and that he

had severed his connection with the company and was
not responsible for its indebtedness, then this disclaimer
of 'interest' on his part estops him from sharing in the
refund." But there is no evidence on which to base
an estoppel, as suggested in the requested instruction.
True, he had sold his stock, but the matter of the probable
indebtedness to the Government for additional taxes, or
the matter of a refund in the event the company had paid
more taxes than it was justly due, was not taken into con-
sideration by either of the parties at the time the stock
was sold. The fact that the refund was made, which
resulted in an additional assessment against appellee, per-
sonally, brought the matter to his attention, and we
can find nothing in the evidence that he had done prior
to that time to estop him from claiming his share of the
profits he was thus entitled to. We find no error in the
record, and the judgment is therefore affirmed.